UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CANDIS PAYNE, § | |
|     Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:12-CV-5219-M (BF) |
| § | |
| WELLS FARGO BANK, N.A., et al., § | |
|     Defendants. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge for pretrial management. *See* Standing Order of Reference [D.E. 4]. Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion for Summary Judgment [D.E. 32]. For the reasons stated below, the undersigned recommends that Wells Fargo's Motion for Summary Judgment [D.E. 32] be GRANTED.

**BACKGROUND**

On November 27, 2006, Plaintiff purchased her residence located at 6201 Balcony Lane, Dallas, Texas, 75241 (the "Property"). *See* 2d Am. Pet. [D.E. 28 at 4]. Plaintiff also signed a deed of trust as security for the note on her residence. *See id.* [D.E. 28 at 4]. Wells Fargo began servicing Plaintiff's loan on January 1, 2007, and Plaintiff made her monthly mortgage payments to Wells Fargo. *See id.* [D.E. 28 at 5]. However, sometime thereafter Plaintiff defaulted on her loan. On February 11, 2008, the Property was damaged by a fire and Plaintiff submitted a claim to the Property insurer, ASI Lloyds. *See id.* [D.E. 28 at 5]. On May 15, 2009, Wells Fargo received a check from ASI Lloyds in the amount of $86,801.15. *See id.* [D.E. 28 at 5]. Pursuant to the terms of the deed of trust, insurance proceeds were to be made payable to the lender and the lender had the option

of applying the insurance proceeds to reduce the indebtedness of the loan or to repair the damaged property. *See id.* [D.E. 28 at 6].

On September 1, 2009, Wells Fargo put the Property up for sale at a non-judicial foreclosure sale and also purchased the Property for $135,070.35. *See* Summ. J. Mot. [D.E. 32 at 14]; *See* 2d Am. Pet. [D.E. 28 at 6]. Plaintiff contends that she did not receive any notices from Wells Fargo prior to the foreclosure and that Wells Fargo reported the foreclosure to credit bureaus. *See* 2d Am. Pet. [D.E. 28 at 7]. Plaintiff contends that she subsequently discovered that Wells Fargo sold the Property to a third-party on December 31, 2009. *See id.* [D.E. 28 at 7]. On November 29, 2012, Plaintiff filed her Original Petition in the County Court at Law No. 2 of Dallas County, Texas alleging: (1) wrongful foreclosure, (2) fraud, (3) negligence, (4) breach of contract, (5) agency, (6) respondeat superior, and (7) slander of credit; and seeking: (1) economic and actual damages, (2) multiple damages, (3) exemplary damages, (4) declaratory judgment, and (5) attorney's fees. *See* Original Pet. [D.E. 1-5 at 4-8]. On December 21, 2012, Wells Fargo removed this action to this Court. *See* Notice of Removal [D.E. 1]. On January 8, 2013, Wells Fargo filed its Motion to Dismiss [D.E. 5]. On February 18, 2013, Plaintiff filed her First Motion for Leave to File First Amended Petition [D.E. 13] which was granted by the Court. *See* Order [D.E. 14]. In the Amended Original Petition, Plaintiff alleged the following causes of action: (1) wrongful foreclosure, (2) money had and received, (3) fraud, (4) negligence, (5) breach of contract, (6) agency, and (7) slander of credit; and sought: (1) multiple damages, (2) exemplary damages and (3) attorney's fees. *See* Pl.'s 1st Am. Pet. [D.E. 13-1 at 4-7]. On March 4, 2013, Wells Fargo filed its Motion to Dismiss Plaintiff's First Amended Original Petition [D.E. 16]. On August 26, 2013, the undersigned recommended that the Court grant Wells Fargo's motion to dismiss but permit Plaintiff one last opportunity to re-plead her

claims regarding a lack of proper notice. *See* Findings, Conclusions & Recommendation [D.E. 23 at 16]. On September 27, 2013, the Court accepted the undersigned's recommendation. *See* Order Accepting [D.E. 27].

On October 9, 2013, Plaintiff filed her Second Amended Original Petition [D.E. 28]. The Second Amended Original Petition includes the following counts: (1) declaration, (2) wrongful foreclosure, (3) breach of contract, (4) usury, (5) common law fraud, (6) Deceptive Trade Practices-Consumer Protection Act ("DTPA"), (7) Texas Civil Theft Liability Act, (8) money had and received, (9) slander of credit, (10) agency; and seeks: (1) multiple damages, (2) exemplary damages, (3) fees for a jury trial, and (4) attorney's fees. *See* 2d Am. Pet. [D.E. 28 at 7-24]. On April 14, 2014, Wells Fargo filed its Motion for Summary Judgment on the grounds that: (1) Wells Fargo's competent summary judgment conclusively establishes that Wells Fargo properly provided all pre-foreclosure notices required under the note, deed of trust and Texas law, and (2) the deed of trust expressly provides that Wells Fargo was entitled to use insurance funds to restore and repair the damage to the Property rather than apply the funds to the loan. *See* Mot. for Summ. J. [D.E. 32 at 11].

## **STANDARD OF REVIEW**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). The movant's burden can be satisfied by showing the court that there is an absence of evidence to support the nonmoving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

## ANALYSIS

### (1) Wrongful Foreclosure

Wells Fargo contends that Plaintiff wholly fails to allege that there was a grossly inadequate selling price or explain how the alleged procedural defect caused an inadequate selling price. *See* Summ. J. Mot. [D.E. 32 at 19]. "In order to allege common law wrongful foreclosure, a plaintiff must establish (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and selling price." *Fashina v. Fed. Home Loan Mortg. Corp.*, No. 3:12-CV-822-N (BK), 2013 WL 1499376, at *2 (N.D. Tex. Mar. 18, 2013) (citations omitted). A "claim for 'wrongful foreclosure' is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect." *Id.* (citing *Biggers v. BAC Home Loans Serving, L.P.*, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011)) (internal quotations and alterations omitted). However, there is an exception to the requirement that the plaintiff must show a grossly inadequate selling price if the lender deliberately "chilled" the bidding at the foreclosure sale. *See Miller v. BAC Home Loans Servicing, L.P.*, No. 12-41273, 2013 WL 4080717, at *8 (5th Cir. Aug. 13, 2013). Because Plaintiff failed to allege a grossly inadequate selling price or that Wells Fargo "chilled" the bidding process

4

and otherwise failed to meet her summary judgment burden with respect to her wrongful foreclosure claim, the Court should grant Wells Fargo's summary judgment motion with respect to this claim.

(2) Breach of Contract

Wells Fargo contends that Plaintiff's breach of contract claim fails because of Plaintiff's prior mortgage default. *See* Summ. J. Mot. [D.E. 32 at 19]. "In order to establish a claim for breach of contract, a plaintiff must establish: (1) the existence of a valid, enforceable contract; (2) the plaintiff performed or tendered performance; (3) defendant breached the contract; and (4) defendant's breach caused plaintiffs' damages." *Bessant v. Wells Fargo Bank, N.A.*, No. 4:13-CV-306, 2014 WL 2996276, at *5 (E.D. Tex. July 3, 2014) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.-Houston [1st Dist.] 2001, no pet.)). Plaintiff does not dispute Wells Fargo's contention regarding her prior failure to timely make her mortgage payments. *See* Pl.'s Resp. Br. [D.E. 39 at 20-21]. Therefore, the Court should grant Wells Fargo's motion for summary judgment with respect to this claim. *See Bessant*, 2014 WL 2996276, at *5 ("The Court agrees that Plaintiff's breach of contract claim fails, because he was in breach. . . . Therefore, Plaintiff's breach of contract claim fails as a matter of law.") (citations omitted).

(3) Usury

Wells Fargo contends that Plaintiff's usury claim fails because the insurance payment Wells Fargo received from ASI Lloyds was not interest. *See* Summ. J. Mot. [D.E. 32 at 20]. "The essential elements of a usurious transaction are (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction from the borrower of a greater compensation than the amount allowed by law for the use of money by the borrower." *Achee Holdings, L.L.C. v. Silver Hill Fin., L.L.C.*, No. 09-40232, 2009 WL 2610797, at *1 (5th Cir. Aug. 26, 1990) (internal quotations

and citation omitted). "Interest is defined under Texas law as compensation for the use, forbearance, or detention of money but does not include compensation or other amounts that are permitted to be contracted for, charged, or received in addition to interest." *Id.* (citing TEX. FIN. CODE § 301.002(a)(4)) (internal quotations and alterations omitted). Because the insurance proceeds do not constitute interest, the Court should grant Wells Fargo's summary judgment motion with respect to this claim.

(4) <u>Common Law Fraud</u>

Wells Fargo argues that Plaintiff's fraud by non-disclosure claim is barred by the economic loss rule. *See* Summ. J. Mot. [D.E. 32 at 21]. "A fraud claim under Texas law is actionable when: (1) a material misrepresentation was made; (2) the representation was false; (3) the falsity of the representation was known to be false when made or was asserted without knowledge of its truth; (4) the representation was intended to be acted upon; (5) the representation was relied upon; and (6) injury occurred as a result." *Garcia v. Universal Mortg. Corp.*, No. 3:12-CV-2460-L, 2013 WL 1858195, at *9 (N.D. Tex. May 3, 2013) (citing *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010); *Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)). "Under Texas law, the economic loss rule generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract. . . . Tort damages are recoverable, however, if the defendants' conduct would give rise to liability independent of the fact that a contract exists between the parties. . . . When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Garcia*, 2013 WL 1858195, at *9 (internal citations and quotations omitted). Here, Plaintiff's allegations of loss pursuant to her fraud claim is directly related to the loan and arise solely from her contractual

6

relationship with Wells Fargo under the note and deed of trust. *See* 2d Am. Pet. [D.E. 28 at 16]. Therefore, the economic loss rule precludes Plaintiff's fraud claim, and the Court should grant Wells Fargo's summary judgment motion with respect to this claim. *See Garcia*, 2013 WL 1858195, at *9.

### (5) DTPA

Wells Fargo argues that Plaintiff's DTPA claim fails as a matter of law, because Plaintiff is not a consumer under the DTPA. *See* Summ. J. Mot. [D.E. 32 at 22]. "Under Texas law, the elements of a DTPA claim are: (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Marquez v. Fed. Nat'l Mortg. Ass'n*, No. 3:10-CV-2040-L, 2011 WL 3714623, at *5 (N.D. Tex. Aug. 23, 2011) (citing *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); TEX. BUS. & COMMERCE CODE § 17.50(a)(1) (internal quotations omitted). "A consumer is defined as an individual who seeks or acquires by purchase or lease, any goods or services." *Marquez*, 2011 WL 3714623, at *5 (internal quotation and citation omitted). "A person who only seeks to borrow money is not a consumer, within the meaning of the DTPA, because lending money involves neither a good nor a service." *Id.* (citing *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984)).

"Although a loan is not in itself a good or service, a lender may be subject to a DTPA claim if the borrower's objective is the purchase of a good or service." *Id.* "The determining factor is whether the purchase or lease of a good or service 'was an objective of the transaction, not merely incidental to it.'" *Marquez*, 2011 WL 3714623, at *5 (citing *F.D.I.C. v. Munn*, 804 F.2d 860, 865 (5th Cir. 1986)). In *Woods v. Bank of America, N.A.*, the Court determined that the plaintiff lacked standing to bring his DTPA claim because the servicing or administration of the home mortgage loan

7

at subject in the lawsuit was incidental to the plaintiff's purchase of the home and therefore, the plaintiff was not a consumer under the DTPA. *See Woods v. Bank of America, N.A.*, No. 3:11-CV-1116-B, 2012 WL 1344343, at *7 (N.D. Tex. Apr. 17, 2012) ("Where, as in this case, however, the servicing or administration of the loan is merely incidental to a plaintiff's prior objective to purchase a residence, such events do not bestow consumer status upon the plaintiff for purposes of the DTPA.") (citing *Marquez*, 2011 WL 3714623, at *6). Similarly, in *Marquez v. Federal National Mortgage Association*, the Court dismissed the plaintiff's DTPA claim because the home mortgage loan was incidental to the purchase of the plaintiff's residence. The Court explained as follows:

> In this case, Plaintiff obtained a loan to purchase the Property, and it is clear from the record that Plaintiff's objective was the purchase of his residence. Any servicing or administration of the loan was incidental to that objective. Plaintiff was not seeking to purchase a good or service with respect to the servicing of his loan. From what the court can ascertain, Marquez's sole purpose was to borrow money to pay for the Property. Accordingly, the court determines that Plaintiff is not a consumer for purposes of the DTPA and, therefore, does not have standing to maintain a DTPA action. To the extent that Defendants seek dismissal of Plaintiff's DTPA claim, Defendants' motion to dismiss will be granted.

*See Marquez*, 2011 WL 3714623, at *6. Accordingly, Plaintiff lacks standing to bring her DTPA claim because she is not a consumer under the DTPA. Therefore, the Court should grant Wells Fargo's summary judgment motion with respect to this claim.

### (6) Texas Civil Theft Liability Act

Wells Fargo argues that Plaintiff's Texas Civil Theft Liability Act claim fails as a matter of law because Wells Fargo was entitled to the insurance proceeds under the express terms of the deed of trust. *See* Summ. J. Mot. [D.E. 32 at 24].

> The Texas Civil Theft Liability Act provides that a defendant is liable to the plaintiff for damages resulting from a theft, as defined by the Texas Penal Code §§ 31.03-31.04. Tex. Civ. Prac. & Rem.Code §§ 134.002-134.003. The Texas theft statute

> provides that it is an offense to "unlawfully appropriate[] property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03(a). "Appropriate" is defined as bringing about the transfer of title, *see id.* § 31.01(4) . . . . "Appropriation of property is unlawful if it is without the owner's effective consent." *Id.* § 31.03(b)(1). "Consent is not effective if induced by deception or coercion." *Id.* § 31.01(3)(A). For purposes of the theft statute, "deception" includes "promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed." *Id.* § 31.01(1)(E) (emphasis added).

*Saint Paul Commodities, L.L.C. v. Crystal Creek Cattle Co.*, No. 3:11-CV-37-G, 2012 WL 3135574, at *4 (N.D. Tex. Aug. 1, 2012). Because Wells Fargo, not Plaintiff was entitled to the insurance proceeds under the express terms of the deed of trust, the Court should grant Wells Fargo's motion for summary judgment with respect to this claim.

(7) <u>Money Had and Received</u>

Wells Fargo contends that Plaintiff's money had and received claim fails due to the parties' contractual relationship and that the claim is also barred by the statute of limitations. *See* Mot. for Summ. J. [D.E. 32 at 25]. "Money had and received is an equitable doctrine designed to prevent unjust enrichment. . . . This cause of action arises when a party obtains money that, in equity and good conscience, belongs to another. . . . A claim for money had and received is not based on wrongdoing; rather, the only question is whether the defendant holds money that, in equity and good conscience, belongs to another." *Merry Homes, Inc. v. Luc Dao*, 359 S.W.3d 881, 883 (Tex. App.-Houston [14th Dist.] 2012, no pet.) (citations omitted). There is a 2-year statute of limitations for money had and received claims. *See id.* ("In a series of three decisions, the Supreme Court of Texas has concluded that unjust enrichment claims are governed by the two-year statute of limitations provided by section 16.003 of the Texas Civil Practice and Remedies Code."). Further, the existence of an express contract precludes equitable relief under the theory of money had and received. *See*

9

*TIB-The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014). In addition, a party can plead legal and equitable claims in the alternative only where one of the parties disputes the existence of the contract at issue. *See id.* ("Because neither TIB nor CCB disputes the existence of a contract that governs the parties' relationship, TIB cannot state an alternative claim under Texas law for unjust enrichment or for money had and received."). Here, Plaintiff concedes that there is an express contract and contends that Wells Fargo endorsed the insurance check on May 27, 2009. *See* 2d Am. Pet. [D.E. 28 at 4-6]; Pl.'s Resp. Br. [D.E. 39 at 10]. Plaintiff filed her suit on November 29, 2012. *See* Original Pet. [D.E. 1-5]. Therefore, the Court should grant Wells Fargo's motion for summary judgment with respect to this claim.

### (8) Slander of Credit

Wells Fargo contends that Plaintiff's slander of credit claim fails because: (1) there is no summary judgment evidence and Plaintiff has not pled that Wells Fargo made any false statements concerning Plaintiff, (2) two separate provisions of the Fair Credit Reporting Act preempt state law slander and defamation claims and (3) the one year statute of limitations for defamation claims bars this claim. *See* Mot. for Summ. J. [D.E. 32 at 26]. In Texas, the elements of a defamation claim are: (1) a false statement was made about the plaintiff, (2) the statement was published to a third-party without legal excuse and (3) the plaintiff's reputation was damaged as a result. *See Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006). Because Plaintiff points to no summary judgment evidence showing that Wells Fargo made false statements concerning Plaintiff, the Court should grant Wells Fargo's motion for summary judgment with respect to this claim.

### (9) Agency

Plaintiff alleges that Wells Fargo is liable for any acts or omissions committed by an agent,

10

representative, or employee of Wells Fargo within the scope of employment. *See* 2d Am. Pet. [D.E. 28 at 23]. However, Plaintiff does not specify any wrongdoing by Wells Fargo's agents, representatives, or employees in the Second Amended Original Petition. *See id.* [D.E. 28]. Therefore, Plaintiff's agency claim fails.

(10) Declaration

Wells Fargo argues that Plaintiff is not entitled to declaratory relief because all of Plaintiff's substantive claims fail as a matter of law. *See* Mot. for Summ. J. [D.E. 32 at 27]. The federal Declaratory Judgment Act ("FDJA") applies to cases removed from state court. *See Thompson v. Bank of America, N.A.*, 13 F. Supp. 3d 636, 660 (N.D. Tex. 2014) (citing *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 591 (N.D. Tex. 2013)). The "FDJA is a procedural device that creates no substantive rights. . . . a request for declaratory judgment is remedial in nature and dependent upon the assertion of viable causes of action." *Id.* Because Wells Fargo's motion for summary judgment should be granted with respect to Plaintiff's substantive claims, the Court should grant Wells Fargo's request for summary judgment with respect to Plaintiff's request for declaratory relief.

(11) Attorneys' Fees

Wells Fargo seeks $8,500.00 in attorneys' fees under the provisions of the deed of trust. *See* Mot. for Summ. J. [D.E. 32 at 27-28]. "In a diversity case based on state law claims, state law controls both the award of fees and the reasonableness of fees awarded." *Trujillo v. Wells Fargo Bank, N.A.*, Civ. Action No. H-13-2444, 2014 WL 6886074, at *5 (S.D. Tex. Dec. 4, 2014) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)). "Under Texas law, attorneys' fees may not be recovered unless provided for by statute or contract." *Trujillo*, 2014 WL 6886074, at *5 (citing *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992); *New*

11

*Amsterdam Casualty Co. v. Texas Indus. Inc.*, 414 S.W.2d 914 (Tex. 1967)). Relevant provisions of the deed of trust state the following:

> If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that might significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations) then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property. . . . Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument.

*See* Def.'s App. [D.E. 33-1 at 11]. Further, the note states the following: "If Lender has required immediate payment in full . . . Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law." *See id.* [D.E. 33-1 at 6]. Wells Fargo should be awarded attorneys' fees pursuant to the terms of the contract between the parties. *See Berry v. Fed. Nat'l Mortg. Ass'n*, No. 3:11-CV-1288-L, 2014 WL 982872, at *6 (N.D. Tex. Mar. 13, 2014) ("Given that this is a breach of contract case and given that the Deed of Trust establishes the availability of attorney's fees as a remedy, the court determines that Defendants are entitled to attorney's fees."); *Fashina v. Fed. Home Loan Mortg. Corp.*, No. 3:12-CV-822-N (BK), 2013 WL 5300652, at *2 (N.D. Tex. Sept. 20, 2013) ("In similar post-foreclosure actions brought by mortgagors, this Court has held the defendants were entitled to recover attorneys' fees under deed of trust provisions like the one in this case. . . . Accordingly, in light of the contractual provisions highlighted above, the Court finds that Defendant is entitled to recover from Plaintiff its reasonable attorneys' fees.").

In determining whether the requested attorneys' fees are reasonable, a court considers the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). The undersigned considered the affidavit of Richard A. Illmer, the supervising attorney in this case, wherein he avers that the rates and fees charged by the law firm of Husch Blackwell, LLP are reasonable and comparable to the rates charged in the Northern District of Texas. *See* Def.'s App. [D.E. 33-3 at 2]. Wells Fargo also submitted detailed billing records setting forth the nature of the work performed, the hourly rates charged and the time spent by the attorneys and paralegals involved. *See id.* [D.E. 33-3 at 6-24]. Having considered the time spent on the various tasks in this matter, the experience of counsel, the reasonableness of the hourly rates broken down between the senior attorney of record, associates, and paralegals, and the numbers of hours or fraction thereof expended by each, the undersigned finds that the fee request in the amount of $8,500.00 is reasonable. Although Wells Fargo incurred $21,940.00 in legal fees, it is seeking less than half of that amount. *See id.* [D.E. 33-3 at 4]; *Fashina*, 2013 WL 5300652, at *2 (awarding $25,912.40 in attorneys' fees in a similar post-foreclosure case). The undersigned recommends that the Court award Wells Fargo the requested $8,500.00 in attorneys' fees.

**RECOMMENDATION**

For the foregoing reasons, the undersigned respectfully recommends that the Court **GRANT** Wells Fargo's Motion for Summary Judgment [D.E. 32] and award Wells Fargo attorneys' fees in the amount of $8,500.00.

**SO RECOMMENDED**, this 20th day of January, 2015.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).